FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

1/28/26

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.                                            CASE NO. 3:25-cr-262-BJD-PDB

JACINTH BAILEY

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, JACINTH BAILEY, and the attorney for the defendant, John Rockwell, Esq., mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information.  Count One charges the defendant with conspiracy to commit an offense against the United States, specifically engaging in marriage fraud in violation of 8 U.S.C. § 1325(c), all in violation of 18 U.S.C. § 371.

2.    Maximum Penalties

Count One is punishable by a term of imprisonment of not more than five years, a fine of not more than $250,000, or a term of imprisonment and a fine, a term of supervised release of not more than three years, and a mandatory special assessment of $100 due on the date of sentencing.  A violation of the terms and

Defendant's Initials _JB_                                    AF Approval _JMH_

conditions of supervised release carries a maximum sentence of not more than two years' imprisonment, as well as the possibility of an additional term of supervised release.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

(1)    two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit marriage fraud in violation of 8 U.S.C. § 1325(c), as charged in the Information;

(2)    the defendant knew the unlawful purpose of the plan and willfully joined in it;

(3)    during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Information; and

(4)    the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

4.    Indictment Waiver

Defendant acknowledges that she has lawfully and voluntarily waived the right to be charged by way of indictment before a federal grand jury.

Defendant's Initials _JB_                    2

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to her specific conduct particularly described in this plea agreement.

6.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely

Defendant's Initials _JB_                3

with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      7.    <u>Cooperation - Substantial Assistance to Be Considered</u>

          Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the

Defendant's Initials _____           4

imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this

Defendant's Initials ___JB___                    5

agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case,

Defendant's Initials __JB__                  6

pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment, and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to

Defendant's Initials _JB_            7

any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials ___JB___                8

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five

Defendant's Initials __JB__                    9

years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government

Defendant's Initials __JB__                    10

expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from her waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _JB_                11

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials _JB_                    12

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___10th___ day of ___September___ 2025.

GREGORY W. KEHOE
United States Attorney

_____
JACINTH BAILEY
Defendant

_____
DAVID B. MESROBIAN
Assistant United States Attorney

_____
JOHN ROCKWELL
Attorney for Defendant

_____
MICHAEL J. COOLICAN
Assistant United States Attorney

_____
DANIEL J. MARCET
Assistant United States Attorney
Chief, National Security Section

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:25-cr-262-BJD-PDB

JACINTH BAILEY

## PERSONALIZATION OF ELEMENTS

**As to Count One:**

    1.    Do you admit that in the Middle District of Florida, from an unknown date not later than in or about October 2024, and continuing through in or about February 2025, you and at least one other person agreed to try to accomplish a common and unlawful plan to commit marriage fraud in violation of 8 U.S.C. § 1325(c), as charged in the Information?

    2.    Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

    3.    Do you admit that during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Information, including that in or about October 2024, a conspirator who lived in Jacksonville, Florida, contacted you to recruit you to enter a sham marriage with a foreign national?

    4.    Do you admit that the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

Defendant's Initials _JB_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:25-cr-262-BJD-PDB

JACINTH BAILEY

## FACTUAL BASIS

The Immigration and Nationality Act ("INA") governed the immigration laws of the United States. Pursuant to the INA, non-citizens of the United States ("aliens") generally were not permitted to permanently reside in the United States unless they were lawful permanent residents ("LPRs").

A United States citizen seeking to assist a relative who was an alien in obtaining LPR status in the United States was required to file United States Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative. An alien seeking to obtain LPR status in the United States was required to file USCIS Form I-485, Application to Register Permanent Residence or Adjust Status.

When a United States citizen filed a Form I-130 petition for an alien spouse, a visa could be immediately available to the alien spouse upon the approval of Form I-130, because the spouse was an immediate relative. Immediate relatives had special immigration priority and did not have to wait in line for a visa number to become available for them to immigrate because there were an unlimited number of

Defendant's Initials  JB

visas for spouses of United States citizens.  An immediate relative relationship generally allowed the alien spouse to apply on Form I-485, Application to Register Permanent Residence or Adjust Status, to become an LPR either at the same time or subsequent to their United States citizen spouse filing Form I-130, Petition for Alien Relative.

Once USCIS approved an alien for LPR status, the agency issued the alien an LPR card (Form 1-551 or "green card").  The LPR card authorized the alien to lawfully reside and work in the United States.

Beginning on an unknown date not later than in or about October 2024, and continuing through in or about February 2025, the defendant, Jacinth Bailey, did knowingly and willfully combine, conspire, confederate, and agree with others, including Conspirator-1, Conspirator-2, Conspirator-3, Conspirator-4, Conspirator-5, and others known and known to the United States, to enter and arrange sham marriages between U.S. citizens and Chinese nationals.  The purpose of the fraudulent marriages was to evade immigration laws and to attempt to illicitly obtain beneficial immigration status for the Chinese nationals, thereby obstructing USCIS in its administration of the immigration laws of the United States.

Prior to joining in this conspiracy, the defendant was on active duty in the U.S. Navy, stationed in Norfolk, Virginia.  In or around October 2024, the defendant received a call from Conspirator-1, an active-duty Navy servicemember stationed in Jacksonville with whom the defendant was acquainted.  Conspirator-1 asked the defendant if she would be interested in making money by marrying

Defendant's Initials __JB__                    2

someone.  When the defendant indicated her interest, Conspirator-1 introduced the defendant to Conspirator-2, another active-duty Navy servicemember stationed in Jacksonville who was then working as a Navy recruiter.  Conspirator-2 sent messages via social media to the defendant in which he explained that she would have to travel to New York, marry a foreign national, and then facilitate the foreign national obtaining beneficial immigration status in exchange for the money.

After the defendant agreed to participate in this conspiracy, Conspirator-2 introduced her to Conspirator-3 in or around November 2024. Conspirator-3 was a Navy reservist who lived in New York.  Via phone calls and text messages, Conspirator-3 advised the defendant that as part of the marriage fraud scheme, she would be paid approximately $45,000 for the entire process of marrying a Chinese national, applying and obtaining a "green card" for her future, nominal husband, and then divorcing him.  Conspirator-3 said that the defendant would be paid $10,000 up front.  The defendant agreed to join the conspiracy and marry a Chinese national to fraudulently obtain him beneficial immigration status.

On or about January 1, 2025, the defendant flew to New York, New York, where Conspirator-3 and Conspirator-4 took her to dinner to discuss her impending sham marriage with Conspirator-5, a Chinese national.  The next day, January 2, 2025, Conspirator-3 and Conspirator-4 introduced the defendant to Conspirator-5 for the first time, and then drove them to a courthouse in Connecticut where the defendant legally married Conspirator-5.  Conspirator-4 also introduced the defendant to Conspirator-6, who appeared to the defendant to be one of the

Defendant's Initials ___JB___                    3

leaders of the conspiracy. Conspirator-6 spoke Chinese, but through Conspirator-4 acting as a translator, asked the defendant to apply for and obtain a military identification card for Conspirator-5 that would enable Conspirator-5 to access military facilities.

After the wedding on January 2, 2025, the defendant traveled back to New York with Conspirator-3, Conspirator-4, and Conspirator-5, where they attended a party held to celebrate the sham wedding and substantiate its purported legitimacy by taking pictures to be used for immigration application purposes. At the party, Conspirator-3 paid, and the defendant accepted, $10,000 in cash for marrying Conspirator-5. Following her wedding, the defendant continued to live and work in Virginia. She never lived with Conspirator-5 as her husband.

Between January 4, 2025, and February 4, 2025, Conspirator-3 and Conspirator-4 sent messages to the defendant via an encrypted messaging application with requests for information and documents in support of the application for Conspirator-5's green card. The defendant provided pictures of her birth certificate and passport. On January 18, 2025, Conspirator-4 asked the defendant when the defendant could come back to New York because she needed a better copy of the defendant's birth certificate. On January 22, 2025, Conspirator-4 sent messages to the defendant stating, "Hello Bailey, How are you? I am filling the application but missing some information. Can you pls tell me your Parent DOB. . . . And since your citizenship acquired through naturalization, did you have the certificate of

naturalization?" Conspirator-3 also messaged the defendant, asking if she would obtain a military identification card for Conspirator-5.

In January 2025, a confidential source (CS-1) met with a Special Agent with the Naval Criminal Investigative Service (NCIS) and provided information about Conspirator-3 and his suspected involvement with criminal activity. CS-1 was on active duty in the Navy and previously had served with both Conspirator-2 and Conspirator-3 aboard USS Carney, a guided missile destroyer.

CS-1 told the NCIS agent, among other things, that in late November 2024, Conspirator-3 and CS-1 met at a bar in Jacksonville, Florida. During their meeting, CS-1 noticed Conspirator-3 seemed to have a significant amount of money. CS-1 stated he knew Conspirator-3 was now in the Navy Reserves and questioned Conspirator-3 about his wealth. Conspirator-3 explained to CS-1 that Conspirator-3 had recently married a Chinese national. Conspirator-3 asked CS-1 if he would be willing to house Chinese nationals, for which CS-1 would be paid. CS-1 said he would consider it, but did not provide an answer.

After reporting this and other information to NCIS, CS-1 stayed in contact with Conspirator-3 at the direction of law enforcement. During a recorded call on February 8, 2025, Conspirator-3 told CS-1, among other things, that when they meet in person, they could talk about the marriage scheme that they had previously discussed. Conspirator-3 stated that CS-1 had an advantage because CS-1 is "still in" (referring to CS-1's active-duty Navy status). CS-1 inquired about how much CS-1

Defendant's Initials __JB__                    5

and his current spouse (CS-2) would be paid for participating in fraudulent marriages in the future. Conspirator-3 replied that they would make $35,000 each.

On February 13, 2025, Conspirator-3 met with CS-1 in person in Jacksonville. Their meeting was recorded. Among other things, Conspirator-3 told CS-1 more about the marriage fraud scheme. He told CS-1 that he and CS-2 could be paid $35,000 each to get married, with $10,000 up front.

Text messages and photographs establish that, later that evening, Conspirator-2, Conspirator-3, and other conspirators met at a hotel in Jacksonville.

The next day, CS-1 again met with Conspirator-3 and two other individuals (Conspirators-4 and -6) at a restaurant in Jacksonville. This meeting was also recorded and the parties discussed, among other things, marriage fraud. After CS-1 told Conspirator-3 that he and CS-2 were interested in joining the scheme, Conspirator-3 suggested that they start a group chat together. He stated that he would need three years of their tax returns and pictures of CS-1's passport, CAC card (*i.e.*, his military identification card), and their birth certificates. Conspirator-3 informed CS-1 that he would be required to change his residence to a New York address. He explained the reason for the address change was so "whoever the client is – we're going to match you up with – we can't have two documents going to the same place."

On March 13, 2025, federal agents interviewed the defendant in Virginia. The interview was recorded. Before being questioned, she was informed that she was not

Defendant's Initials __JB__                    6

under arrest and was advised of her constitutional rights, which she said she understood.  She also read aloud and signed a form waiving those rights.

During the interview, the defendant admitted the conduct set forth above. When asked what her husband's (Conspirator-5) name was, she did not remember. The defendant stated that she did not obtain a military identification card for Conspirator-5 despite the other conspirators' requests, and would never have done so.